IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CASSANDRA JUSTE,<br><br>    Plaintiff,<br><br> v.-<br><br>TURNING POINTE AUTISM FOUNDATION;<br>THE CAPITAL GROUP COMPANIES, INC.; and<br>AMERICAN FUNDS DISTRIBUTORS, INC.,<br><br>    Defendants. | Case No. 23 CV 15143 |

**COMPLAINT**

Plaintiff, Cassandra Juste, through her counsel, and for her Complaint against Defendants Turning Pointe Autism Foundation, The Capital Group Companies, Inc., and American Funds Distributors, Inc., alleges and states as follows:

THE PARTIES

1. Plaintiff Cassandra Juste is an individual, a resident and a citizen of the Northern District of Illinois, and was employed by Defendant Turning Pointe Autism Foundation at all relevant times. Plaintiff is a "participant", a "beneficiary", an "employee" and a "person" as those terms are defined in 29 USC § 1002.

2. Defendant Turning Pointe Autism Foundation is a non-profit corporation organized and existing under Illinois laws (referred to herein as "Turning Pointe" or the "Employer").

Turning Pointe was Plaintiff's "employer", and is or was the "plan" "administrator", as those terms are defined in 29 USC § 1002.

3. Defendant The Capital Group Companies, Inc. (herein, "Capital Bank and Trust Company") is a Delaware corporation registered to conduct business in Illinois as a foreign BCA with the Illinois Secretary of State, and conducts business using the names "Capital Bank and Trust Company" and "Capital Group". Capital Bank and Trust Company is a custodian and an administrator of the SIMPLE Plan established by Turning Pointe, as set forth below.

4. Defendant American Funds Distributors, Inc. (herein, "American Funds") is a California corporation registered to conduct business in Illinois as a foreign BCA with the Illinois Secretary of State, and conducts business using the names "American Funds" and "American Funds Service Company." American Funds is a custodian and an administrator of the SIMPLE Plan established by Turning Pointe, as set forth below.

JURISDICTION

5. Jurisdiction over this action is conferred on this Court by 28 U.S.C. § 1331 on the basis of federal question jurisdiction, and Section 502(e)(1) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1132(e)(1), as this is a civil action brought by a participant for relief under 29 U.S.C. §§1132(a)(1) and (3), and therefore concerns an action arising under the laws of the United States. This Court's supplemental jurisdiction over Plaintiffs' Illinois claim is required pursuant to 28 U.S.C. § 1367(a), because that claim is so related to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the illegal conduct alleged herein occurred in this district, and a defendant resides or may be found in this district, pursuant to 29 U.S.C. §1132(e)(2). Plaintiff lives within the boundaries of the Eastern Division of the United States District Court for the Northern District of Illinois and worked for Defendant Turning Pointe within those boundaries; Plaintiff received certain benefits of her employment there, and would have received benefits that were denied to her there, and the effect of Defendants' conduct was experienced by Plaintiff in this location.

### FACTS IN SUPPORT OF PLAINTIFF'S CLAIMS

7. Plaintiff was hired by Turning Pointe as a special education teacher's aide, in the fall of 2020.

8. The position was a full-time, salaried, non-exempt position, with benefits to "begin the first of the month following your start date", according to Turning Pointe's December 9, 2020 offer letter, Exhibit 1, attached.

9. Plaintiff was told by Turning Pointe's human resources department when she was hired that, normally, an employee must be employed for nine months to be eligible for enrollment in Turning Pointe's retirement plan.

10. When Plaintiff's employment duration with Turning Pointe reached nine months, her employer's Human Resources representative, Deb Cox, contacted Plaintiff and informed her it was "time to sign up for the plan."

11. Plaintiff met with Ms. Cox several times over the course of the next several weeks, and sought orally and obtained orally information about how much she could contribute to a retirement plan, how much Turning Pointe would provide in matching contributions, how to initiate the opening of a retirement account, and related information.

12. Turning Pointe had previously established an employer-sponsored independent retirement account retirement plan, called a '**S**avings **I**ncentive **M**atch **P**lan for **E**mployees', or 'SIMPLE' IRA Plan ("The SIMPLE Plan" or "plan"). A SIMPLE IRA plan enables employers to contribute to traditional IRAs established for employees, and employees may also contribute.

13. Turning Pointe provided Plaintiff with a document that references and describes the SIMPLE IRA plan; see Exhibit 2, attached.

14. On November 9, 2021, Plaintiff enrolled in Turning Pointe's SIMPLE Plan, by electing deferrals of her salary to the Plan; and returning executed documents to Turning Pointe that had been provided to her. The document document she signed established Plaintiff's ownership of an "American Funds SIMPLE IRA" and "appoints Capital Bank and Trust Company as Custodian". See Exhibit 3, attached.

15. Turning Pointe then forwarded the documents to Defendant American Funds, on or about November 09, 2021. See, Exhibit 3, p. 1, top margin, hand-written note.

16. Turning Pointe's representatives, including Ms. Cox, informed Plaintiff that the documents had been forwarded to American Funds and that Plaintiff was enrolled in the SIMPLE Plan.

17. Plaintiff was and is a participant and a beneficiary under the terms of the SIMPLE plan.

18. Upon information and belief, Defendant American Funds and Defendant Capital Bank and Trust Company are named or designated fiduciaries in the SIMPLE Plan documents. In any event, each of them functions or has functioned as a fiduciary by exercising discretionary authority or control over the management or operation of the plan or its assets, pursuant to 29 U.S.C. §§ 1002(21(A), 1102(a)(1), (2).

19. Deb Cox's employment was subsequently terminated by Turning Pointe.

20. Plaintiff was promoted several times during her employment with Turning Pointe, and received compensation increases as a result.

21. Despite Plaintiff's several compensation increases, at times Plaintiff's compensation, following such increases, did not provide her with a net pay check in excess of the compensation she had received from her employer in previous pay periods.

22. At no time did any of Defendants disclose to Plaintiff that there was any objection to, problem with, or question about her enrollment in the SIMPLE Plan, or express in any manner to Plaintiff that Plaintiff's enrollment was incomplete or unaccepted, or disclose to or inform Plaintiff that Plaintiff was not enrolled in the SIMPLE Plan.

23. After the termination of Plaintiff's employment with Defendant Turning Pointe in February, 2023, Plaintiff subsequently learned that none of the Defendants ever processed Plaintiff's application to participate in the SIMPLE Plan, never deposited elective deferrals into the SIMPLE Plan, never matched the amount of contributions Plaintiff would have made to the SIMPLE Plan, and never contributed any funding to any retirement plan on Plaintiff's behalf.

24. Instead, each of the Defendants failed to acknowledge Plaintiff's enrollment in the SIMPLE Plan.

25. As a result, each Defendant breached its duties of loyalty, prudent care, and action with the exclusive purpose of providing benefits to Plaintiff.

## Count I - ERISA, 502(a)(1)(A) -

### Failure To Provide Required Disclosures & Summary Plan Descriptions vs. Turning Pointe

26. Plaintiff realleges paragraphs 1-25.

27. The SIMPLE IRA plan referenced in Exhibits 2 & 3 in which Plaintiff enrolled was an employee benefit plan.

28. Section 1024(b)(1)(A) of ERISA provides that the administrator of a plan shall furnish each participant a copy of the summary plan description "within 90 days after he becomes a participant." 29 U.S.C § 1024(b)(1)(A).

29. 29 U.S.C. § 1022 provides the specifics as to what must be contained in such summary plan description.

30. None of the Defendants provided Plaintiff with a copy of a summary plan description within 90 days after she became a participant.

31. 29 U.S.C. §1132(a)(1)(A) provides that a civil action may be brought by a participant or beneficiary for the relief provided in subsection (c), concerning an administrator's refusal to supply requested information, or to provide annual reports.

32. 29 U.S.C. §1132(c)(1)(B) provides that any administrator who fails to meet the disclosure requirements of 29 U.S.C. §1025(a), or refuses to comply with a request for any information which such administrator is required by the subchapter to furnish to a participant or beneficiary, by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request, may be personally liable in the court's discretion for a penalty in the amount of up to $100 per day from the date of such failure or refusal.

33. The foregoing statute specifies that each violation shall be treated as a separate violation of the penalty provisions thereof.

34. 29 U.S.C. § 1132(c)(1) provides that the court, in its discretion, may make any administrator who fails to meet the foregoing requirements "personally liable to such participant or beneficiary in the amount of $100 a day from the date of such failure."

35. Pursuant to 29 U.S.C. § 1025(a), the administrator of an individual account plan shall furnish a pension benefit statement at least once each calendar quarter to a participant or beneficiary who has the right to direct the investment of assets in his or her account.

36. Plaintiff has never been provided with a pension benefit statement.

37. Plaintiff still has not received the 401(k) Summary Plan Description despite her numerous requests.

38. Plaintiff cannot know anything about her ownership of the SIMPLE Plan without these disclosures, including but not limited to the automatic contribution process, when her participation actually begins, her opportunity to opt out of the plan or change her contribution level, or where her automatic contributions have been invested, her right to change investments, or to change the financial institution where her contributions are invested.

39. Plaintiff is entitled to receive the statutory penalty from the plan administrator for $100 per day for each day of violation. The total possible penalty due for failure to provide the 401(k) Summary Plan Description "within 90 days after (s)he becomes a participant" is therefore

equal to $100 per day for 615 days[1] from 90 days after November 9, 2021 through October 19, 2023. That penalty is therefore $61,500 and accruing daily.

40. Plaintiff likewise did not receive a pension benefit statement at least once each calendar quarter as required by 29 U.S.C. 1025(a)(1), beginning January 1, 2022. The total possible penalty due for failure to provide the pension benefit statement quarterly is therefore equal to $100 per day for 654 days[2] from January 1, 2022 through October 17, 2023. The penalty is therefore $65,400 and accruing daily.

41. An annual report of the employee benefit plan is also required to be provided to participants, including Plaintiff, as required by 29 USC § 1023(a); its contents are as described in 1023(a)(1)(B). Plaintiff likewise did not receive an annual report of the employee benefit plan as required by 29 U.S.C. 1023(a), beginning January 1, 2022. The total possible penalty due for failure to provide the annual report of the employee benefit plan is therefore equal to $100 per day for 654 days (see fn.2) from January 1, 2022 through October 17, 2023. The penalty is therefore $65,400 and accruing daily.

42. Plaintiff also requested of Defendant Turning Pointe a copy of "any summary of benefits and coverage, summary plan, description, any summary of material modifications, and any plan documents pertaining to all employee, retirement accounts", on April 19, 2023, see Exhibit 4.; but has not received any of those documents in response, as required by 29 U.S.C. § 1132(c)(1)(B). The total possible penalty due for failure to provide the 401(k) Summary Plan

---

[1] https://www.timeanddate.com/date/durationresult.html?m1=2&d1=9&y1=2022&m2=10&d2=17&y2=2023

[2] https://www.timeanddate.com/date/durationresult.html?m1=01&d1=01&y1=2022&m2=10&d2=17&y2=2023

Description "from the date of such failure or refusal" is therefore equal to $100 per day for 183 days[3] from April 19, 2023 through October 19, 2023. That penalty is therefore $18,300 and accruing daily.

43. Plaintiff is entitled to receive separate statutory penalties from the plan administrator for each violation, of $61,500 + $65,400 + $65,400 + 18,300 = $210,600, plus daily accruals thereafter, until the requested information has been provided.

44. Defendant Turning Pointe is the plan sponsor and a plan administrator of the plans and as such is a named fiduciary.

45. The failure to provide the requested information occurred through bad faith and intentional conduct on the part of the administrator.

46. The length of the delay in each instance has been extensive.

47. Plaintiff made multiple requests for the documents and information in question.

48. 29 U.S.C. §1132 provides that in any action under ERISA by a participant or beneficiary, the court may allow reasonable attorney's fees and costs of the action to the prevailing party.

49. Plaintiff has incurred and reasonably expects to incur further attorney's fees in connection with pursuit of these claims; Plaintiff should receive all of her reasonable attorney's fees and costs of this action; and prejudgment interest at the highest rate available in the discretion of the Court, for the delay in payment of benefits and their earnings.

## Count II - ERISA, 502(a)(1)(B) -
## Recovery of Benefits Due Under Plan- vs. Turning Pointe

50. Plaintiff realleges each of the previous paragraphs.

---

[3] https://www.timeanddate.com/date/durationresult.html?m1=4&d1=19&y1=2023&m2=10&d2=19&y2=2023.

51. 29 U.S.C. §1132(a) provides that a civil action may be brought by a participant or beneficiary to recover benefits due to her under the terms of her plan, to enforce her rights under the terms of the plan or for other appropriate equitable relief to redress violations of ERISA or to enforce any provisions thereof or the terms of the plan.

52. Defendants have denied Plaintiff the benefits of the SIMPLE Plan by failing to make any contributions from Plaintiff's compensation, failing to make any matching contributions on behalf of Plaintiff, and by failing to deposit any elective deferrals into the SIMPLE Plan for investment as required and/or provided by the terms of the SIMPLE Plan.

53. Turning Pointe has breached the terms of the SIMPLE Plan.

54. The amount of contributions and matching contributions that should have been made on behalf of Plaintiff is a readily calculable sum, based upon Plaintiff's compensation, upon her interest and desire to maximize the amount of investment in the SIMPLE Plan, and upon federal law providing for the maximum deferral limit in each year of her employment with Defendant Turning Pointe.

55. By virtue of the breaches of obligations under the terms of Plaintiff's compensation package and the SIMPLE Plan, Plaintiff has been damaged by Defendants' failure or refusal to make matching contributions and to timely deposit elective deferrals for investment.

56. In November, 2021, Plaintiff Cassandra Juste committed in writing to make required pre-tax matching contributions to the SIMPLE Plan as set forth in the SIMPLE IRA Salary Deferral Election form of 3%. Plaintiff thus agreed to reduce her salary in order to permit Defendants to make the required matching contributions. Defendants still did not comply, failing to make such required contributions, such that additional damage caused by Defendants' breach of the

agreement and plan concerning matching contributions is Plaintiff's lost salary that would otherwise have been due to her.

57. Defendants have therefore breached the terms of the plan and Plaintiff's agreement for compensation, such that Plaintiff is entitled to recover all benefits due to her under the terms of the plan, to enforce her rights under the terms of the plan and to obtain other appropriate equitable relief to redress violations and to enforce the terms of the plan.

58. Plaintiff is entitled to the remedies of restitution and an accounting to specifically determine the full extent of all benefits denied to her pursuant to the terms of the SIMPLE Plan and arising out of Defendants' various breaches of contractual and statutory duties as to total amounts that should have been paid in matching contributions and in timely payments to said plan, as well as all investment income that would have been generated had appropriate matching contributions been made as required and lost salary also caused by Defendants' breaches.

59. 29 U.S.C. §1132 provides that in any action under ERISA by a participant or beneficiary, the court may allow reasonable attorney's fees and costs of the action to the prevailing party.

60. Plaintiff has incurred and reasonably expects to incur further attorney's fees in connection with pursuit of these claims; Plaintiff should receive all of her reasonable attorney's fees and costs of this action; and prejudgment interest at the highest rate available in the discretion of the Court, for the delay in payment of benefits and their earnings.

### Count III - Estoppel -
### Recovery of Benefits Due Under Plan- vs. All Defendants

61. Plaintiff realleges each of the previous paragraphs.

62. Plaintiff seeks to enforce the benefits knowingly promised by Defendants to Plaintiff, as appearing in the documents provided by Defendants to Plaintiff, including Exhibits 2 & 3.

63. Plaintiff relied on the promises made by Defendants to provide secure, deferred income and her reliance was reasonable, given the circumstances under which such information was provided to her, including her employment relationship with Defendant Turning Pointe, the representations made to her by Turning Pointe, and the representations made to her by all Defendants in writing.

64. Plaintiff was injured as a result of Defendants' failures to provide the plan benefits.

65. An injustice to Plaintiff would occur if the Plan terms were not enforced for her benefit and against each Defendant.

66. Plaintiff is entitled to recover all benefits due to her under the terms of the plan, to enforce her rights under the terms of the plan and to obtain other appropriate equitable relief to redress violations and to enforce the terms of the plan.

67. Plaintiff is entitled to the remedies of restitution and an accounting to specifically determine the full extent of all benefits denied to her pursuant to the terms of the SIMPLE Plan and arising out of Defendants' various breaches of contractual and statutory duties as to total amounts that should have been paid in matching contributions and in timely payments to said plan, as well as all investment income that would have been generated had appropriate matching contributions been made as required and lost salary also caused by Defendants' breaches.

68. 29 U.S.C. §1132 provides that in any action under ERISA by a participant or beneficiary, the court may allow reasonable attorney's fees and costs of the action to the prevailing party.

69. Plaintiff has incurred and reasonably expects to incur further attorney's fees in connection with pursuit of these claims; Plaintiff should receive all of her reasonable attorney's fees and costs of this action; and prejudgment interest at the highest rate available in the discretion of the Court, for the delay in payment of benefits and their earnings.

## Count IV - ERISA Breach of Fiduciary Duty - Recovery of Benefits Due Under Plan- vs. All Defendants

70. Plaintiff realleges each of the previous paragraphs.

71. Each of the Defendants has been a fiduciary of the SIMPLE Plan, and has owed a fiduciary duty to Plaintiff, as set forth in 29 U.S.C. § 1104, *et seq.*, in that they have exercised discretionary authority or control respecting management of the plan or exercised any authority or control respecting management or disposition of plan assets.

72. Defendants engaged in prohibited transactions (a) as fiduciaries with respect to the plan, by acting knowingly in failing to deposit monies that were to be deferred from Plaintiff's income and that should have been timely contributed to the SIMPLE Plan, which constituted a direct or indirect use of assets of the plan for the benefit of Defendants, rather than Plaintiff; and (b) as fiduciaries in dealing with the assets of the Plan in their own interests or for their own account, to the exclusion of Plaintiff's interest in the account.

73. Defendant Turning Pointe further was acting in a fiduciary capacity when it made the challenged representations set forth in paragraph 16.

74. Defendant Capital Bank and Trust Company and Defendant American Funds further were acting in a fiduciary capacity when they agreed to accept Plaintiff's deferred salary

compensation and contribute those funds to the Plan on Plaintiff's behalf, as set forth in Exhibits 2 & 3.

75. The representations made by Turning Pointe's conduct and as set forth in paragraph 16 and the representations made by Defendant Capital Bank and Trust Company and Defendant American Funds in Exhibits 2 & 3 and elsewhere constituted material misrepresentations.

76. Plaintiff detrimentally relied on those misrepresentations by assuming that the contributions required would be made.

77. Defendant Turning Pointe violated its standard of loyalty to Plaintiff by making such misrepresentations and failing to direct the contributions to be made.

78. Defendants Capital Bank and Trust Company and Defendant American Funds violated their fiduciary duties to Plaintiff by failing to make the contributions to the SIMPLE Plan.

79. Wherefore, Plaintiff seeks the entry of an order finding that each of Defendants is a fiduciary and owes fiduciary duties to Plaintiff; for the entry of judgment in favor of Plaintiff and against each Defendant, jointly and severally, including a surcharge against each of the Defendants, for make-whole relief in the form of money damages; the imposition of a constructive trust or equitable lien on the particular SIMPLE Plan property that in good conscience belongs to Plaintiff, including but not limited to the maximum amount Plaintiff would have been permitted to contribute to the SIMPLE IRA plan, along with the maximum matching amount Turning Pointe would have contributed to the SIMPLE Plan and the maximum amount of earnings thereon; or, alternatively, for disgorgement and for an accounting for profits should Defendants no longer have possession of the retained assets; and Plaintiff's reasonable attorney's fees and costs of this action; and prejudgment interest at

the highest rate available in the discretion of the Court, for the delay in payment of benefits and their earnings; and for such other or further relief as this Court may deem just.

October 19, 2023

                                       Respectfully submitted,

                                       CASSANDRA JUSTE, Plaintiff

                                       By: */s/ Jeffrey Grant Brown*
                                               Jeffrey Grant Brown

Jeffrey Grant Brown
**JEFFREY GRANT BROWN, P.C.**
**ATTORNEY FOR PLAINTIFF**

65 West Jackson Blvd., #107
Chicago, Illinois 60604
(312) 789-9700
jeff@JGBrownlaw.com
IARDC #6194262